decision. Will hear argument next in Moore v. City of New York 18947. Good morning, judges. I'm going to represent Paula Moore, who's the appellant. She believes that she was wrongfully terminated. She believes that she was terminated on a basis of her national origin and race. And she believes that she set forth more than enough facts and evidence in the complaint and the second amended complaint such that the lower court should not have dismissed her case at that preliminary stage, 12B6 stage. For instance, we have here a black woman, African-American descent, steeped in African-American culture, who says that she works for an agency that discriminates against African-American employees at higher levels. And she attempts to give some examples of that. So she says, hey, I was here for 25 years. Then in the same month as I was terminated, 25 years later, they say that I forfeited my employment because I lived outside the city of New York. You agree, I take it, that the job she held when she was terminated did have a residency requirement. Yes, absolutely. But she admits that she lived in Englewood. She did. She did. But, you know, I don't think that the initial stage is where you make that determination about whether or not she has admitted or proffered enough information to show pretext for their given legitimate reason. She did show pretext. She said that another woman, who happened to be African-Caribbean, lived outside the city of New York and she named her by name. Did she say that person's position was subject to a residency requirement? She did not. And my position, Your Honor, is that that's evidentiary detail that should, because that's a similarly situated argument, and she's at the beginning. She was able to say that she was able to name her. She could only name her if she relied on the organizational chart, which was attached to my, as part of my evidence in response to the city. I could not have drafted the second amendment complaint without relying on that organizational chart. And by putting the names there, I believe that that showed that I did rely in drafting the second amendment complaint on the chart. How did you know, just in connection with paragraph 16 of the complaint, that an associate staff analyst's one position required residence in the city of New York? That is... Because that's upon information and belief. Yeah, that's something that Ms. Moore told me. Okay. That's where I got that from. So the organizational chart doesn't show, I mean, does it show what position Ms. Neffville-Gray had? Yeah. I mean, if you go to page 106, you can see the org chart, and you see Ms. Neffville-Gray is right below. She's in a direct line of reporting to Beverly James, defendant James, and then to Jacqueline. 106? Also, yeah, page 106. Also, it shows that she's a director, and most importantly, it shows that she's an administrative staff analyst. That's her civil service title. Well, isn't it possible to, just because my client is a... Well, if your answer is yeah, why isn't that in paragraphs 36 and 37? All you say, all it says is one such employee who lived outside of the city of New York was Neffville-Gray, female, African and Caribbean descent. That's 37, who was not terminated. But it doesn't say that there was a residency requirement associated with her... It doesn't tell you what she does, but set that aside. It does not say that there was a residency requirement associated with her job. It's true, but the plaintiff is saying that she... The plaintiff is pointing out a few things. One, that they leveled the requirement on her and not Gray, who's Caribbean. Two, she names Gray. Three, we're arguing that in a pre-textual situation. And also, it's like, what is enough? How much is sufficient? At this beginning stage, I don't know all the... It's impossible to know, even with the org chart, all of the nuances of similarly situated, which is why these cases oftentimes are decided at the summary judgment level when people have had a chance to look at everything. But... The comparator does not have a residency requirement, then there was no issue of pre-textual... That her... Your client's termination being a pretext for discrimination. Isn't that right? Yes, sir. But I believe that by attaching the organizational chart, even though it was a lapse of judgment on my part to not put in the residency requirement in the complaint, that if you look at the org chart, it shows that they have the same civil service title. So therefore, they would have the same residency requirement. All of the comparators have the same civil service title as Ms. Moore, and they all did you know, did things... Were permitted to do things that Ms. Moore was not permitted to do. Now, I was only able to name one comparator for the living outside of New York City, but for the part-time work situation, I was able to name two, which are Hernandez and Bath, both of whom have plaintiff's civil service title. And I just believe that when I say that a plaintiff was replaced by someone who's outside of her group, that under Littlejohn, that is the minimum standard to show that kind of discrimination under this kind of comparative theory. And what we're really doing is arguing whether or not... Oh no, but you also have to at least allege that the plaintiff is qualified adequately. Yeah, that's true. The issue here is by virtue of the fact that she didn't have... She was not a resident of New York, was she qualified for this job? Well, she was qualified. I think the presumption, Your Honor, is yes, because she held the job at ACS for 25 years, at least eight or nine years of which she, under the guidelines, needed to be a resident of New York City. Nevertheless, she says, Your Honor, that she didn't know, that nobody ever asked her or told her or anything, and it wasn't until after she had put in these requests for waivers and not heard anything back from it, and then they had a hearing for her, did this city residency thing come up. And in fact, that leads me right into her letter. In her letter, the city argues that it's not protected activity. I strongly argue that it is, because we're not just looking at, and I think the letter is on page 67, judges. We're not just looking at where she says, oh, I feel my job was threatened and I'm discriminated against, but she lays out the timeline, which is basically saying to her supervisor, Defendant James, you guys are trying to set me up to terminate me. The only reason that she would believe that they were trying to set her up to terminate her is so that they could replace her from someone who's outside of her group, which they did. And this is that, and if that's what the city was indeed doing, James certainly did know that this letter was all about discrimination. So your view is that just referencing in the last line, I feel like I'm being discriminated against is enough? I believe that when you take that and you put it into context, because remember, we're talking about... Well, I'm looking at the context, but the only reference to anything that's discriminatory is that last line. Yeah, but she's trying... Nobody's going to say we're going to discriminate against you because you're not Caribbean. Nobody's going to ask it. She's trying to tell James in a long-winded way that I'm being set up. And when you talk about unfair employment practices under Title VII, the fact that she was asked for a hearing and was denied one can fairly be viewed as an unfair employment practice, and she's protesting that. Let's assume she's being set up, which is your argument. Perhaps set up because nobody liked her. I'm making that up. Sure. By saying, I feel like I am being discriminated against, she's not notifying anyone as to the basis for that discrimination. Well, she's saying my job is being threatened and I'm being discriminated against. And then she tries to give the reader, Ms. James, a timeline of how she feels like she's treated poorly, being set up, because that's how she ends it. She says in paragraph nine, on top of requesting proof of my New York City residency, the personnel notice indicated the failure to establish and maintain city residence as required shall result in forfeiture of employment. And she's obviously like, where's this coming from? I mean, she's being caught off balance because she's been working there for years and years, doing a good job. Nobody's ever, it's never come to this until now, until she won't accept the settlement offer, because she feels like if she accepts the settlement offer, then she will be terminated. Thank you very much, Mr. You reserve no time for rebuttal. So we'll hear from Mr. Anton. May it please the Court, Jason Anton for appellees. Plaintiff Paula Moore was fired because by her own admission she lacked an essential qualification for her position, city residency. ACS discovered plaintiff's true residency despite initial attempts to conceal it during a separate disciplinary proceeding and promptly took action. Plaintiff's claims of discrimination and retaliation accordingly fail because she did not identify individuals subject to the same residency requirement who were treated differently, and she neither pled protected activity nor a plausible connection between that protected activity. Breyer. Is everyone on that chart subject? Just set aside the allegations for a second. Mm-hmm. Is everyone on that chart subject to the same residency requirement? So I don't know, Your Honor, and that's the issue. The way the residency requirement works is any particular agency, the presumption is a subject to the residency requirement, and that agency sets forth several positions as designated hard-to-recruit or a variety of other exceptions that make them not subject to the residency requirement. So, for example, at ACS, as Plaintiff herself alleged, the caseworker, the child protective specialist position, is exempt from the city residency requirement at ACS. There are also several attorneys who are exempt from the residency requirement. And it's that's why you can't tell just by looking at a position alone whether or not that position is subject to the residency requirement. Now, what Plaintiff could have done here is attempted to gain that information to get the good-faith basis for her complaint the same way she learned about others who lived outside the city in the first place. She was represented by counsel. She had an attempt to amend the complaint after Judge Sullivan identified the deficiency in her first amended complaint, and still did not make the essential allegation, based on information and belief or however she had to do it, that there were others there who were subject to the same residency requirement who were not treated in the same fashion. And that's why she's not qualified for her position, and ACS did not act in a discriminatory fashion in getting in – in terminating her. Now, it's appropriate for this Court certainly to assess that issue here at the motion-to-dismiss stage. I cite a couple of instances where the Court has done so in my brief. That's the Shaw and Newpage case, where there aren't allegations even to suggest, to plausibly show that the comparators identified in the complaint were similarly situated, such that the qualification itself was not applied in a neutral manner. The showing of similarly situated require, in addition, an allegation of facts to the effect that the – the hierarchy was aware of the nonresidency of someone else? I think it might require that, Your Honor. I don't think we even get to that stage here, because she doesn't even allege that they were subject to it in the first place. But that's the key question. That's why this is, without question, a material aspect of whether they are similarly situated, because the only way the qualification requirement could have been applied in a discriminatory fashion is whether it could have been applied to those comparators in the first place, whether they could have been fired by virtue of the fact that they did not live in the City of New York and also, as I note in my brief, had not worked for the City for two years and were living in a suburban New York County, which would also make them exempt from the New York City residency requirement. But even if this Court were to go past it, past this qualification issue, I don't think Plaintiff has even met the minimal burden of showing an inference of discrimination here, not only because of the similarly situated issue, but also because the various mistreatment that she alleges. She doesn't allege that anyone else had similar conflicts of interest that were at issue. She doesn't allege that the individuals who were demoted or terminated were not done – that they were not done – terminated for a reasonable reason, they were terminated for a discriminatory reason. So I think there are several allegation problems with the Second Amended Complaint, which again, district court gave Plaintiff an opportunity to replead that established that she has not met the minimal requirements for moving to discovery in this case. As to the organization chart, organizational chart in particular, Your Honor, the district court was not required to consider it. There's no evidence or allegation here that she relied heavily on its terms and effect. In fact, in the Second Amended Complaint, there's no allegation as to Ms. Newfield Gray's position in the first place, which would be the only thing you would learn from the organizational chart itself. And in, you know, in any event, again, looking at the organizational chart itself, it does not indicate whether Ms. Newfield Gray was subject to the residency requirement. It also doesn't indicate where she lived. She may have lived outside the city again, but in Westchester or in Nassau County, which, if she had worked for the city for two years, would be sufficient. With respect to the retaliation claim, Your Honor, again, it's two instances of protected activity, alleged protected activity, but neither qualify. The first, with respect to rejecting the settlement agreement, Plaintiff herself alleges it was because she wanted to clear her name, not because she was acting or speaking out against protected discrimination. And there's no causal connection here because there's no plausible basis for ACS to have known that she was engaging in protected activity and that they could retaliate for that protected activity. With respect to the letter in particular, as Judge Loyer, you pointed out, solely saying discrimination does not tie the letter to a protected characteristic. That's what's necessary in order to render it protected activity. And therefore, again, ACS could not have known that it was actually protected activity that Plaintiff was engaging in. Breyer. In this case, maybe, there are other cases where context matters. Sure, Your Honor. There is no other context here, and that's the issue. And it's also important to remember that this letter poststated the notification of the residency compliance interview by a few days. So it could not be that ACS retaliated for sending that letter because of the way the timeline works. And for those reasons, Your Honor, we ask that the Court affirm. Thank you very much. We'll reserve the decision. And we'll hear argument next in Forrester v. Corizon Health. 173592.